*FOR PUBLICATON*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ISAAC BARLOW,<br><br>Defendant. | Civil Action No. 3:06-cv-00694<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

In 2008, Defendant Isaac Barlow was sentenced to mandatory life in prison for drug trafficking. If sentenced today, his penalty range would be ten years to life. This is a result of the Fair Sentencing Act, which reduced the statutory penalties for crack cocaine offenses, *see* Pub. L. No. 11-220, 124 Stat. 2372 (2010), and the First Step Act, which made the Fair Sentencing Act retroactive. *See* Pub. L. No. 115-391, 132 Stat. 5194 (2018). Pursuant to these statutes, Barlow moves for a sentence reduction, asking for time served. The United States opposes, arguing that the Court should not modify Barlow's sentence below the range recommended by United States Sentencing Guidelines ("USSG"), or 360 months. For the following reasons, I **GRANT** in part and **DENY** in part Barlow's motion, and impose a total sentence of thirty (30) years.

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On June 20, 2007, a jury convicted Barlow of five drug trafficking offenses. Among them: conspiracy to distribute 50 grams or more of crack cocaine and possession with intent to distribute

1

the same.[1] *See* ECF No. 119. Based on Barlow's then-existing statute of conviction, he faced ten years to life. 21 U.S.C. § 841(b)(1)(A). The USSG recommended the following sentence:

- Base Offense Level under § 2D1.1(c)(1): **32** (Barlow's offenses involved the equivalent of more than 1,000 kilograms but less than 3,000 kilograms of marijuana)
- Career Offender Enhancement under § 4B1.1: **5** (Barlow had prior felony drug convictions)
- Total Offense Level: **37**
- Criminal History Category: **VI** (Barlow had prior felony drug convictions and committed the instant offenses while on parole, less than two years after release from custody, and near a school)
- Guideline Recommendation: **360 months to life** (Total Offense Level x Criminal History Category)

*See* Presentencing Report ("PSR"), ¶¶ 62-72, 75-100, 130. But, as I noted at sentencing, none of that mattered. *See* ECF No. 116, at T18. Because the Government filed an Enhanced Penalty Information, *see* ECF No. 64, the statutory minimum increased to life. 21 U.S.C. § 851(a). On January 29, 2008, I sentenced Barlow accordingly.[2] *See* ECF No. 116, at T33:9-14; *Dorsey v. United States*, 567 U.S. 260, 266-67 (2012) ("[N]o matter what range the Guidelines set forth, a sentencing judge must sentence an offender to at least the minimum prison term set forth in a statutory mandatory minimum."). Barlow moved for a reduction on April 28, 2020, after 13 years in prison, which is now pending. *See* ECF No. 156.

II.     **LEGAL STANDARD**

---

1      Count 1 of the Second Superseding Indictment charged conspiracy to possess and distribute 50 or more grams of crack cocaine from August 2005 to May 2006. Count 2 charged possession with intent to distribute 50 or more grams of crack cocaine on January 7, 2006. Count 3 charged possession with intent to distribute cocaine on February 14, 2006. Count 4 charged possession with intent to distribute crack cocaine on February 14, 2006. Count 5 charged using 223 Walnut Avenue, Trenton, New Jersey to make and distribute crack cocaine from January 2006 to March 2006. Count 6 charged possession with intent to distribute 50 or more grams of crack cocaine on March 31, 2006.

2      I imposed mandatory life for Counts 1, 2, and 6, and 240 months for Counts 3 and 5, to run concurrently. I also imposed ten years' supervised release for Counts 1, 2, and 6, and 5 years' for Counts 3 and 5, also concurrent. *See* ECF No. 116, at T33:15-18; ECF No. 119. The jury did not convict on Count 4.

The Court has jurisdiction under 18 U.S.C. § 3582(c), which governs motions to modify a defendant's sentence, including under the First Step Act. Section 3582(c) authorizes modifications in four situations. The first two are set forth in § 3582(c)(1)(A): when "extraordinary and compelling reasons warrant such a reduction" or certain defendants reach 70 years of age, have served at least 30 years of their term, and do not pose a threat to society. Section 3582(c)(1)(B) authorizes modifications "to the extent otherwise expressly permitted by statute," and § 3582(c)(2) does so where a sentencing range would be lower under later-revised Guidelines. First Step Act motions fall under § 3582(c)(1)(B). *United States v. Easter*, 975 F.3d 318, 323 (3d Cir. 2020); *United States v. Wirsing*, 943 F.3d 175, 185 (4th Cir. 2019) ("[T]he distinct language of the First Step Act compels the interpretation that motions for relief under that statute are appropriately brought under § 3582(c)(1)(B)."). As such, the "conditions, limits, or restrictions on the relief permitted" are specified in § 404 of the Act. *United States v. Sutton*, 962 F.3d 979, 984 (7th Cir. 2020).

### III. DISCUSSION

#### A. The Fair Sentencing Act of 2010 and the First Step Act of 2018

Before discussing Barlow's motion, some background on the applicable statutory framework is necessary so as not to "sanitize" the racial effects of federal drug sentencing, which are far from "benign." *Terry v. United States*, No. 20-5904, 593 U.S. ___, --- S. Ct. ---, 2021 WL 2405145, at *5 n.1 (June 14, 2021) (Sotomayor, J., concurring in part and concurring in the judgment). Barlow violated 21 U.S.C. § 841(b), which Congress passed in 1986 to address the "crack epidemic." U.S. Sentencing Comm'n, *Report to the Congress: Cocaine and Federal Sentencing Policy* 5-6, 9-10 & n.31 (May 2002). Section 841(b) provides three tiers of statutory penalties for possession with intent to distribute crack/cocaine. As a baseline, at the time of

3

enactment, § 841(b)(1)(C) specified a 20-year maximum and no mandatory minimum for small, unspecified amounts of either drug. *Terry*, 2021 WL 2405145, at *1 ("[Section (C)] did not carry a mandatory minimum sentence, did not treat crack and powder cocaine offenses differently, and did not depend on drug quantity."). Sections 841(b)(1)(A) and (B) imposed mandatory minimums based on drug quantity alone:

| Statutory Provision | Drug Quantity | Statutory Penalty | Enhanced Penalty |
|---|---|---|---|
| 21 U.S.C. § 841(b)(1)(A) | 50 or more grams of crack cocaine | 10 years to life | 20-year mandatory minimum after 1 prior felony drug conviction<br><br>Life after 2 prior felony drug convictions |
| 21 U.S.C. § 841(b)(1)(B) | 5 or more grams of crack cocaine | 5 to 40 years | 10-year mandatory minimum after 1 prior felony drug conviction |

Five grams of crack cocaine weigh as much as a nickel, and 50 grams are equal to half a stick of butter. *Terry*, 2021 WL 2405145, at *6 (Sotomayor, J., concurring in part and concurring in the judgment). To trigger the same sentences under the 1986 bill, a defendant must deal in 500 grams of cocaine (heavier than a football) or 5,000 grams (about a gallon of paint). *Id.* Black people bore the brunt of this disparity, making up 80 to 90 percent of crack cocaine convictions between 1992 and 2006. U.S. Sentencing Comm'n, *Report to Congress: Cocaine and Federal Sentencing Policy* 13 (May 2007).

In 2010, Congress passed the Fair Sentencing Act, which reduced the penalties attached to §§ 841(b)(1)(A) and (B) by increasing the triggering quantities for crack offenses more than fivefold. Pub. L. No. 11-220, 124 Stat. 2372. The threshold for the five-year mandatory minimum is now 28 grams, and it is 280 grams for the ten-year minimum. These upward revisions narrowed the sentencing disparity between cocaine and crack from 100:1 to 18:1. *See Dorsey*, 567 U.S. at 268-69 (describing "four separate reports [from the Sentencing Commission] telling Congress that

4

the ratio was too high," and explaining how the public came to "understand sentences embodying the 100-to-1 ratio as reflecting unjustified race-based differences"). As Congress ultimately realized, federal drug sentencing for crack versus cocaine "rested on assumptions about the relative harmfulness of the two drugs and the relative prevalence of certain harmful conduct associated with their use and distribution that more recent research and data no longer support." *Kimbrough v. United States*, 552 U.S. 85, 97-98 (2007).

Congress passed the First Step Act in 2018 to make the Fair Sentencing Act retroactive, and to provide defendants imprisoned before 2010 with an opportunity for a revised sentence. *See* S. Comm. on the Judiciary, 115th Cong., The First Step Act of 2018 (S. 3649) (stating, on a version with the same text as the bill ultimately enacted, that the goal is to "allow prisoners sentenced before the Fair Sentencing Act of 2010 reduced the 100-to-1 disparity in sentencing between crack and powder cocaine to petition the court for an individualized review of their case") (emphasis omitted). Under § 404, a defendant may move for "a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act [ ] were in effect at the time the covered offense was committed."[3] Pub. L. 115-391, 132 Stat. 5194. The First Step Act cut certain penalty enhancements as well, which can cause a sentence to skyrocket. *Id.* § 401. Barlow's revised statute of conviction imposes the following mandatory minimum penalties:

| Statutory Provision | Drug Quantity | Statutory Penalty | Enhanced Penalty |
| --- | --- | --- | --- |
| 21 U.S.C. § 841(b)(1)(A) | 280 or more grams of crack cocaine | 10 years to life | 15-year mandatory minimum after 1 prior serious felony drug conviction or serious violent felony |

---

3     In their briefs, the parties devoted substantial attention to the definition of a "covered offense" under the Fair Sentencing Act. The United States argued that it referred to a defendant's actual conduct, not his statute of conviction. The Third Circuit has rejected that position. *United States v. Jackson*, 964 F.3d 197, 202 (3d Cir. 2020) ("Congress intended eligibility to turn on a defendant's statute of conviction rather than his conduct."). In turn, the United States has conceded in a letter that Barlow is eligible to be resentenced. *See* ECF No. 161.

| | | | 25-year mandatory minimum after 2 prior serious felony drug convictions or serious violent felonies |
|---|---|---|---|
| 21 U.S.C. § 841(b)(1)(B) | 50 or more grams of crack cocaine | 5 to 40 years | 10-year mandatory minimum after 1 prior serious felony drug conviction or serious violent felony |

Based on these statutory amendments, if Barlow were sentenced today, he would face 5 to 40 years under § 841(b)(1)(B), increased to 10 years to life given his criminal history enhancement. The USSG recommendations "would be the same" because of Barlow's career offender status. Def. Br., at 3, 5 n.1, 6.

B. *Resentencing Procedures and Limitations*

It is also important to clarify my authority on resentencing before proceeding to Barlow's motion. "Nothing [in the First Step Act] . . . shall be construed to require a court to reduce any sentence." § 404(c). So, I may—but need not—modify Barlow's life term. *Jackson*, 964 F.3d at 204 ("[D]istrict courts are under no obligation to provide relief."); *United States v. Brookins*, No. 08-166, 2019 WL 3450991, at *4 (W.D. Pa. July 31, 2019) (collecting cases). Similarly, Barlow is not entitled to a "plenary resentencing hearing at which he would be present." *Easter*, 975 F.3d at 326 (collecting cases). I have decided instead to resolve his motion on the papers.

Next, it is irrelevant for the purposes of First Step Act eligibility whether Barlow is subject to the same USSG recommendation today as before. *See, e.g.*, *United States v. Knight*, No. 98-03, 2021 WL 266341, at *2 (W.D. Pa. Jan. 27, 2021) (collecting cases). The First Step Act conditions relief on whether a defendant is convicted of a "covered offense," not on whether the United States Sentencing Commission ("USSC") has updated the Guidelines to reflect Congress' latest policy determinations or more modern theories of drug sentencing. *See, e.g.*, *United States v. Garrett*, No. 03-00062, 2019 WL 2603531, *3 (S.D. Ind. June 25, 2019) (rejecting the government's contention

that relief should be denied where career offender guideline continues to produce the same sentencing range, 360 months to life, as here); *United States v. Opher*, 404 F. Supp. 3d 853, 868-69 (D.N.J. 2019) (noting that "the Commission has nothing to do with the First Step Act" and "[t]he Act does not contain any directives to the Commission requiring action," and holding that the Act is "unhampered by a tie-in with the guideline sentencing range"); *United States v. Boulding*, 379 F. Supp. 3d 646, 653 (W.D. Mich. 2019) ("The only limits found in the First Step Act are the statutory minimums of the Fair Sentencing Act's new thresholds. The sentencing guidelines inform the Court's discretion to be sure. But they do not limit the Court's discretion."), *aff'd in part, vacated in part, remanded*, 960 F.3d 774 (6th Cir. 2020). Certainly, had Congress intended to tie eligibility under the First Step Act to any element of the USSG, it would have done so explicitly. *See Easter*, 975 F.3d at 323 ("Since the First Step Act would have a minimal impact on inmates who had previously benefited via the Guidelines, Congress's intent must have been to afford relief to [other] pre-Fair Sentencing Act offenders."); *Jackson*, 964 F.3d at 203-04 (holding that defendant was entitled to have his First Step Act motion considered on the merits even though the district court determined that the Guidelines range had not changed).

I turn finally to the scope of my review. I "must consider all of the § 3553(a) factors to the extent they are applicable." *Easter*, 975 F.3d at 326; *United States v. Chambers*, 956 F.3d 667, 674 (4th Cir. 2020). In doing so, I may—but need not—consider "post-sentencing developments" such as health issues or rehabilitation. *Easter*, 975 F.3d at 327; *Chambers*, 956 F.3d at 674-75 (finding such conduct to be relevant even if "the district court cannot vary downward . . . due to the statutory minimum of 10 years," as here); *see also Pepper v. United States*, 562 U.S. 476, 504 (2011) (explaining, in an analogous context, that "[a] categorical bar on the consideration of postsentencing rehabilitation evidence would directly contravene Congress' expressed intent").

Even if I choose to consider post-sentencing conduct, I need not give it any greater weight. *See, e.g.*, *United States v. Robinson*, 813 Fed. App'x. 62, 63 (3d Cir. 2020); *United States v. Williams*, 943 F.3d 841, 844 (8th Cir. 2019) (holding that the "court did not abuse its discretion by considering the rehabilitation, but not adjusting the sentence," even though defendant "ha[d] not had a disciplinary infraction in over nine years and ha[d] used his time in prison to complete 'several personal betterment, education, and vocational programs'"). Of course, I need not hew to my rationale from the original sentencing either. *Knight*, 2021 WL 266341, at *2. I adopted that rationale under meaningfully different statutory circumstances, which embodied Congressional precepts that the First Step Act has replaced. *See* David Alan Sklansky, *Cocaine, Race, and Equal Protection*, 47 STAN. L. REV. 1283, 1297 (1995) (noting that the "legislative history offers no explanation for the selection of a ratio of 100:1," except that it "was the highest ratio proposed").

C. *Barlow's Motion*

With the law in hand, I address Barlow's motion. Three issues bear on its resolution: Barlow's challenge to his career offender designation, the United States' challenge to Barlow's attributable drug quantity, and the § 3553(a) factors, including post-sentencing conduct, which I will consider.

    i.    <u>The Career Offender Designation</u>

Barlow's USSG recommendation is the same today as in 2008: 360 months to life, largely because he qualifies as a career offender. *See* PSR, ¶ 130; Def. Br., at 5-6 (conceding this point). Barlow nevertheless argues that I "should not sentence" him on that "basis" because the career offender designation "arose from the same radically and scientifically defective sources and roots that . . . have now been addressed by the [First Step Act]," yet it does "not account for the remedial

8

changes brought about by [the Act]." Def. Rep. Br., at 11-12. Absent such a designation, Barlow's range would drop dramatically. Def. Br., at 6.

Courts "must consider the sentencing factors anew." *United States v. Murphy*, No. 20-1411, 2021 WL 2150201, at *4 (3d Cir. May 27, 2021); *Easter*, 975 F.3d at 323. This includes "an accurate calculation of the amended guidelines range at the time of resentencing," since the Guidelines *are* a sentencing factor. *Murphy*, 2021 WL 2150201, at *5. A defendant's career offender status is by definition part of that recalculation. *Id.* Here, however, Barlow's status has not changed, as he openly admits. His circumstances are different from other First Step Act movants, whose prior convictions no longer count toward the career offender designation, whether under state law or otherwise. *Cf. United States v. Hudson*, 967 F.3d 605, 612 (7th Cir. 2020) (holding that a court may resentence a defendant under § 404 "with an eye toward current Guidelines" when the USSC removed defendant's burglary convictions from the list of predicate offenses) (quotations omitted); *United State v. Payton*, No. 07-20498, 2019 WL 2775530, *4-5 (E.D. Mich. July 2, 2019) (granting First Step Act motion where career offender status changed because the USSC "dropped burglary of a dwelling from the definition of a crime of violence"); *United States v. Hadley*, 389 F. Supp. 3d 1043, 1050 (M.D. Fla. 2019) ("[T]he offenses underlying the [career offender] enhancement and designation no longer qualify.").

Further, a career offender's total offense level still turns on the statutory maximum for his crime of conviction, which the USSC has not updated, not on the drug quantity tables, which the USSC quickly revised after the Fair Sentencing Act to reflect the new 18:1 ratio. *Compare* USSG § 4B1.1(b) (assigning 37 points for life "if the offense level [in this section] is greater than the offense level otherwise applicable," as in this case) *with* § 2D1.1(c)(6) (assigning 28 points for at least 196 grams of crack, versus 32 at the time of Barlow's original sentencing). 360 months to

life therefore remains the "accurate starting point" for resentencing Barlow and the "proper Guidelines range." *Murphy*, 2021 WL 2150201, at *7.

At bottom, Barlow insists that updates must be coming to the career offender designation: "[n]ow that Congress has changed the statute establishing 'the maximum term authorized,' it is possible, perhaps likely, that the Sentencing Commission will, after due proceedings, [follow suit]." Def. Rep. Br., at 14. Notwithstanding the prospect that the USSC may someday (soon) assess the culpability of career offenders differently, upon a "fresh inquiry" into Barlow's record, the fact remains that he still qualifies as a career offender, which is decisive of his Guidelines range at this time, his policy arguments to the contrary notwithstanding. *Murphy*, 2021 WL 2150201, at *8; U.S. Sentencing Comm'n, Office of Educ. & Sentencing Practice, *ESP Insider Express Special Edition, First Step Act* 8 (Feb. 2019) (stating that § 404 "made no changes to § 3553(a)").

Importantly, regardless of any change in status, I am "free to vary from the career-offender-based sentencing range." *United States v. Foote*, 784 F.3d 931, 941-42 (4th Cir. 2015); *Hawkins v. United States*, 706 F.3d 820, 823 (7th Cir. 2013); *see also United States v. Booker*, 543 U.S. 220, 243 (2005) (holding that the Guidelines are advisory not mandatory). As the Third Circuit emphasized in this context, a district court has discretion "to depart . . . from the Guidelines [ ] as it sees fit." *Murphy*, 2021 WL 2150201, at *7; *see also Beckles v. United States*, 137 S. Ct. 886, 894 (2017) (affirming that the Guidelines "merely guide the district courts' discretion"). Not only are the Guidelines not mandatory, but they "are not to be presumed reasonable." *Nelson v. United States*, 555 U.S. 350, 352 (2009). Thus, more than half of the 2,387 defendants who obtained retroactive sentence reductions in the year following the First Step Act were career offenders like Barlow. U.S. Sentencing Comm'n, *The First Step Act of 2018: One Year of Implementation* 43-44 (Aug. 2020) (finding the average sentence reduction to be six years).

ii. <u>Attributable Drug Quantity</u>

The Government has acknowledged various important points, including my discretion to vary from the USSG recommendation, Barlow's eligibility for resentencing under *Jackson*, the applicability of the § 3553(a) factors under *Easter*, and my ability to consider post-sentencing conduct. However, it insists that I "should determine by a preponderance of the evidence [that] Barlow's drug trafficking conspiracy offense in Count I involved a quantity of crack . . . in excess of the 280-gram threshold" necessary to trigger the 25-year enhanced mandatory minimum[4] in 21 U.S.C. § 841(b)(1)(A) because "just one seizure from Barlow of 155 grams after a foot chase . . . and Barlow's controlled sale of 55 grams to a confidential informant . . . amounted to approximately 210 grams." U.S. Br., at 33. This "does not include any estimated quantity [from] ongoing [ ] distribution . . . throughout the conspiracy period," nor what the Government believes to be "at least another 72 grams" for which Barlow is responsible based on testimony from a cooperating witness. *Id.*

The Government's position is incorrect. To begin, the First Step Act is not a "let's start all over." *Murphy*, 2021 WL 2150201, at *3 (citing cases from the 5th, 6th, 9th, and 11th circuits). I "cannot . . . reconsider the facts as they stood at the initial sentencing," but only "new, relevant

---

4     The Government appears to misstate the applicable penalty range if Barlow is responsible for trafficking 280 grams or more of crack cocaine, arguing that he would be "ineligible for relief" under such circumstances because the penalties for that drug quantity "were not amended by the Fair Sentencing Act." U.S. Br., at 33-35. To the contrary, the statute governing offenses involving 280 or more grams of crack cocaine no longer provides for mandatory life under an Enhanced Penalty Information unless death or serious bodily injury resulted. In relevant part, it now reads: "such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life and if death or serious bodily injury results from the use of such substance shall be not be less than 20 years or more than life . . . . If any person commits such a violation after a prior conviction for a serious drug felony or serious violent felony has become final, such person shall be sentenced to a term of imprisonment of not less than 15 years and not more than life imprisonment and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment . . . . If any person commits a violation of this subparagraph . . . . after 2 or more prior convictions for a serious drug felony or serious violent felony have become final, such person shall be sentenced to a term of imprisonment of not less than 25 years." 21 U.S.C. § 841(b)(1)(A).

facts that did not exist, or could not reasonably have been known by the parties." *Id.* at *4. In particular, I am "bound by a previous finding of drug quantity that could have been used to determine the movant's statutory penalty at the time of [the first] sentencing." *Id.* (quoting *United States v. Jones*, 962 F.3d 1290, 1303 (11th Cir. 2020)).

Barlow's jury convicted on the statutory quantity only. *See* ECF No. 115 (finding, on the verdict sheet drafted by the Government, that "the United States prove[d] beyond a reasonable doubt that the conspiracy involved 50 grams or more of cocaine base"). The jury did not otherwise specify an amount. Barlow's PSR did, but it states that he trafficked 208.09 grams of crack, substantially less than what is necessary to trigger the highest mandatory minimum under the Fair Sentencing Act. *See* PSR, ¶¶ 53-54 (adding 155.49 grams of crack cocaine seized on January 7, 2006, to 52.6 grams seized on March 21, 2006). The Government unequivocally "agree[d]" with this quantity during sentencing. *See* ECF No. 116, at T5:22-23. At the time of briefing, perhaps there was a colorable case for entertaining this issue, although by the Government's own admission no court had ever done so on a First Step Act motion. U.S. Br., at 32. But the Third Circuit has since put it to rest. In light of *Murphy*, I cannot—and, further, decline to—make supplemental findings on attributable drug quantity. *See* 2021 WL 2150201, at *4 n.5 ("[A] resentencing court may not [revisit a defendant's attributable drug quantity] if the relevant facts are those depended on by the district court at the first sentencing.").

It is also worth noting that the Government seeks an increase in the mandatory minimum, which can only be predicated on facts found by a jury. *See United States v. Lopez-Esmurria*, 629 Fed. App'x. 284, 286 (3d Cir. 2015) ("[F]acts that change the mandatory punishment a defendant is subject to—'elements' of a crime—must be found by a jury beyond a reasonable doubt."); *United States v. Rose*, 379 F. Supp. 3d 223, 229-30 (S.D.N.Y. 2019) (calling request to increase

12

attributable drug quantity "draconian and contrary to the remedial purposes of the First Step Act"); *United States v. Thompson*, No. 05-42, 2019 WL 4040403, at *8 (W.D. Pa. Aug. 27, 2019) (concluding same). Barlow's jury did not find a drug quantity sufficient to trigger the penalty range in 21 U.S.C. § 841(b)(1)(A). The Government proved just "50 grams or more." *See* ECF No. 116. Any conflicting finding (which would impose a new minimum punishment, not merely a penalty enhancement) triggers Sixth Amendment scrutiny. *See, e.g.*, *Alleyne v. United States*, 570 U.S. 99, 113 & n.2 (2013); *United States v. Birt*, 966 F.3d 257, 262 (3d Cir. 2020) ("[A]ny fact that legally requires an increased penalty is an element of the substantive crime itself. And if it is necessary to prove different facts for there to be different penalties, then there are different crimes, not merely the same crime with different penalties."); *United States v. Pugh*, No. 95-45, 2019 WL 1331684, *3 (N.D. Ohio Mar. 25, 2019) ("Because the jury made no finding as to the specific drug amount, subsequent Supreme Court precedent requires that defendant cannot be responsible for more than 50 grams [for the purpose of determining the statutory minimums under the Fair Sentencing Act as applied through the First Step Act].").

Likewise, supplemental fact-finding would require "[e]ffectively amending the indictment to reflect the additional quantity . . . needed to trigger a higher level of statutory penalties," since the Government only specified 50 or more grams, which may be "the very form of prejudice precluded by the Presentment Clause" of the Fifth Amendment. *Thompson*, 2019 WL 4040403, at *8; *Russell v. United States*, 369 U.S. 749, 770 (1962) (holding that it is a "settled rule in the federal courts that an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form"); *United States v. Alcorta*, 145 F. Supp .3d 357, 360 (M.D. Pa. 2015) ("The Supreme Court has long held that it is the exclusive province of the grand jury to amend the substance of its indictment.").

None of this is to suggest that I will not take into account the actual quantity of drugs Barlow possessed. As the Third Circuit has stated, it "expect[s]" me to do so when "exercising [my] discretion." *Jackson*, 964 F.3d at 204. But that is not the extent of the Government's request. The Government asks for supplemental fact-finding to increase Barlow's attributable drug quantity beyond what the jury found, what the PSR stated, and what its own attorneys agreed to during sentencing—with the goal of subjecting Barlow to a higher mandatory minimum even though the First Step Act is meant to revise such minimums sharply downward. I fail to see a sound basis on which I could—or should—do that.

      iii.    <u>§ 3553(a) Factors</u>

Finally, I turn to the § 3553(a) factors. Barlow asks for time served because he has exceeded the new mandatory minimum imposed by the Fair Sentencing Act; the recidivism rate is low for people 50 and older, like him; he has maintained family contacts despite moving prisons; and he has completed various classes during his incarceration. Def. Br., at 8-14. Barlow also submits a letter in which he apologizes for his behavior at trial, takes responsibility for the actions leading to his conviction, and explains the ways in which he is a different person now. Finally, Barlow submits letters from his wife, sister-in-law, and the mother of one of his children attesting to his support system should he be released. The Government asks for at least 360 months because of the nature of Barlow's offenses (trafficking), his criminal history (five prior felonies), his disciplinary record in prison (weapons, drugs, fighting), and because "a time served sentence would be less than half of the bottom of the advisory guideline range." U.S. Br., at 35-41.

I must weigh all relevant § 3553(a) factors on a First Step Act motion. *Easter*, 975 F.3d at 326. In Barlow's case, the relevant factors are:

> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

> **(2)** the need for the sentence imposed—
>> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> **(B)** to afford adequate deterrence to criminal conduct;
>> **(C)** to protect the public from further crimes of the defendant; and
>> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> . . .
>
> **(4)** the kinds of sentence and the sentencing range established for—
>> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>>> **(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>>> **(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced
>
> . . . [and]
>
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a).

In doing so, I must give "the particular circumstances of the case . . . meaningful consideration within the parameters of § 3553(a)," and "ensure that where, as here, § 3553(a) arguments [are] raised, [I] address[] them beyond providing more than a rote recitation." *Id.* at 326-27. This can include post-conviction conduct. *Id.* at 327. Weighing the relevant factors on Barlow's motion, I find that a sentence of thirty (30) years is "sufficient, but not greater than necessary, to . . . reflect the seriousness of the offense . . . afford adequate deterrence . . . [and] protect the public." 18 U.S.C. § 3553(a)(2).

Several factors support a reduced sentence. Barlow committed the instant offenses while on parole for state-level convictions, and after serving a four-year term, which called for "very specific deterrence . . . against [him]." *See* ECF No. 116, at T31:23-T32:6. Now, Barlow is 54 years old, 14 years removed from his crimes, and evidence shows that recidivism drops

15

substantially once a defendant reaches age 50. *See* Kim Steven Hunt & Billy Easley II, U.S. Sentencing Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* 22 (2017). Barlow also has "reportedly refrained from associating himself with any gang members while incarcerated," which is not insignificant given his membership in the Bounty Hunter Bloods. *See* PSR Addendum, at 3. As such, I do not share the Government's concern that Barlow is likely to engage in serious criminal activity if released. *Accord United States v. Presley*, 790 F.3d 699, 703 (7th Cir. 2015) (Posner, J.) ("A sentence long enough to keep the defendant in prison until he enters the age range at which the type of criminal activity is rare should achieve the aims of incapacitation and specific deterrence.").

Further, faced with mandatory life, Barlow could have abandoned any meaningful rehabilitation. But he did not do so. He has completed dozens of violence-prevention, drug-education, cognitive-skills, and life-management courses and participated in the Challenge Program, a nine-month cognitive-behavioral course which provides substance abuse and mental health treatment. *See* PSR Addendum, at 3. Although his time therein was cut short in April 2013, I strongly encourage him to complete it. This stands in contrast to Barlow's pre-prison life, which I described as "riddled with convictions for drug offenses." *See* ECF No. 116, at T28:8-11. Indeed, at his original sentencing, I found "very little redeeming in [his] background," which was a "rare statement for me," *id.* at T30:15-18, and no verifiable employment history beyond selling drugs. *Id.* at T31:10-22.

Barlow did not give up on his family, either, despite being housed in five prisons across the country, most recently in Victorville, California. He reports speaking to his wife and children every day, *see* PSR Addendum, at 2, and has submitted letters from Gaynell Johnson (wife and mother of his oldest children), Sakeenah Blakley (mother of his youngest child), and Kimberly

Barlow (sister-in-law) attesting to his character. The letters describe Barlow as "very family oriented" and promise to help him if he is released. Blakley in particular says that she will hire Barlow as a full-time dishwasher at her restaurant and let him live with her. Such support bodes well for successful reintegration.[5] *See, e.g.*, Kimberly Bahna, *"It's a Family Affair"—The Incarceration of the American Family: Confronting Legal and Social Issues*, 28 U.S.F. L. REV. 271, 275 (1994) (showing that supportive family connections correlate with reduced recidivism); Shirley R. Klein et al., *Inmate Family Functioning*, 46 INT'L J. OFFENDER THERAPY & COMP. CRIMINOLOGY 95, 99-100 (2002) ("[A]lthough family ties do not guarantee success after release, the absence of such ties increases the likelihood of failure. The relationship between family ties and lower recidivism has been consistent across study populations, different periods, and different methodological procedures.").

Additionally, Barlow has taken responsibility for his crimes in a letter to the Court. At trial, Barlow was arrogant and remorseless. *See* ECF No. 116, at T32:25. He smirked. *Id.* at T27:6-8. He attempted to "bamboozle" the jury with stories that did not make any sense. *Id.* at T33:3-7. He or his associates called a cooperating witness' family the day before the witness testified. *Id.* at T30:6-8. Now, in contrast, Barlow appears to "truly and humbly apologize . . . for the actions [he] displayed while being present in [the] court room." He believes he is "not the same person . . . when [I] sentenced [him] to life." He "take[s] full responsibility for breaking the law" and admits that he "had it all wrong in my way of thinking." And he wants to start a non-profit called T.T. Hope ("Taking Time Helping Other People Evolve") for inmates like him. This demonstrates self-awareness, a desire to contribute to the community in a positive way, and a willingness to avoid

---

5     It is also not lost on the Court that Barlow "would love to be a part of" his kids' lives—two of whom were nine, one of whom was two months, and one of whom was not yet born when I sentenced him in 2008. Def. Rep. Br., at 20.

the mistakes from his past. Whether he truly holds these attributes remains to be seen, but this show of remorse/contrition is a far cry from when I sentenced him many years ago. A sentence reduction will, finally, avoid unwarranted disparities with similarly situated defendants. *See* U.S. Sentencing Comm'n, *First Step Act of 2018 Resentencing Provisions Retroactivity Data Report* 8, tbl. 5 (Oct. 2019) (finding 28.2% of sentences under the First Step Act to be below even the Guidelines range). For these reasons, I decline to re-impose a life sentence on Barlow.

At the same time, I reject Barlow's request for time served. As I articulated at his first sentencing, Barlow's offenses are very grave. They did not merely "stem[] from relatively low-level . . . drug sales." *Cf. United States v. Redrick*, No. 99-437, 2020 WL 6799253, at *3 (E.D. Pa. Nov. 19, 2020) (reducing sentence to time-served in part on this basis). Barlow ran a sophisticated drug distribution operation as a member of the Bounty Hunter Bloods. As part of his operation, he recruited young people to sell crack on street corners for nearly 24 hours a day, watch for police or "people trying to rob us," and protect his money with guns he supplied—both on the promise of the good life and the threat of punishment if they did not toe the line. *See* ECF No. 116, at T29:9-17. His operation included a "galling" crack house, and his neighbors were so terrified of him that one wore sunglasses and her shirt inside-out to testify as a witness. *Id.* at T29:18-T30:8, T30:9-14. The Government emphasizes these points, and they remain my greatest concern.[6] To reflect the seriousness of Barlow's convictions and ensure just punishment for them, there is a need for a greater sentence than thirteen or so years. *See* 18 U.S.C. § 3553(a)(2)(A).

Barlow's prison record also raises red flags. Between 2008 and 2020, Barlow was disciplined seven times: three times for possessing a dangerous weapon (2008, 2018, 2020), once

---

6    Disturbing though they are, "the Fair Sentencing Act and the First Step Act reflect Congress's judgment that shorter prison sentences adequately reflect the seriousness of crack cocaine offenses," so I will not maintain Barlow's life sentence based on the nature of his convictions alone. *United States v. Biggs*, No. 05-316, 2019 WL 2120226, at *4 (N.D. Ill. May 15, 2019).

for possessing an unauthorized item (2015), once for destroying an item during a search (2014), once for possessing marijuana (2014), and once for fighting (2013). While I recognize that some of these are minor, the weapons infractions—particularly two within the last few years—are concerning. In March 2020, just three months before Barlow moved for a sentence reduction, prison officials found in his cell two pieces of steel cut from a locker, which he apparently carved into a knife, concealed with cardboard and tape, and painted gray to match his wall. In 2018, they found a knife. And in 2008 they found an "ice pick." *See* PSR Addendum, at 2-3. I cannot discount these incidents, which show an ongoing propensity to engage in prohibited and dangerous behavior. Nor can I overlook the timing of the incident in 2020, which casts doubt on Barlow's proclamation that he is now a "changed man." Def. Rep., at 19. With additional years, perhaps Barlow can rehabilitate further.

In all, based on the relevant § 3553(a) factors, I find that thirty (30) years is an appropriate sentence for Barlow, which is the low end of the USSG recommendation. *Accord United States v. King*, No. 00-313, 2021 WL 1581598, at *2 (E.D. Pa. Apr. 21, 2021) (declining to reduce a 360-month sentence because defendant "was a leader of an organization that distributed a large amount of crack in Philadelphia over a period of years"). Barlow's offenses are serious, as is his prison record, but significant time has passed, he is getting older, his family supports him, and he has exhibited some personal growth while imprisoned.

IV. **CONCLUSION**

Barlow's Motion for a Sentence Reduction under § 404 of the First Step Act is **GRANTED** in part and **DENIED** in part. Specifically, Barlow's mandatory life sentence for Counts 1, 2, and 6 is reduced to thirty (30) years. All other terms and conditions from the original sentence,

including Barlow' concurrent 240-month sentence for Counts 3 and 5, remain in effect. *See* ECF No. 116, at T33. An amended Judgment and Commitment Order shall be entered with this Opinion.

**DATED**: June 22, 2021 /s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge